1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11  MAMMOTH HARDWARE & LUMBER,
    INC., a California corporation,
12                                       NO. CIV. S-05-2486 LKK/JFM

13          Plaintiff,

14      v.                                      O R D E R

15  ACE HARDWARE CORPORATION, a
    Delaware corporation; and
16  LEE DICKMAN, an individual,

17          Defendants.
    _____/
18

19       Plaintiff Mammoth Hardware & Lumber (owned by Ms. Nowell)

20  filed suit in state court against defendants Ace Hardware,  Ace

21  employee Lee Dickman and 100 Does.  The complaint alleges six

22  causes of action under California law.  The first cause of action

23  is against Dickman, Ace, and the Does for intentional interference

24  with prospective economic advantage.  The remaining causes of

25  action (not at issue in this motion) are for breach of the implied

26  covenants of good faith and fair dealing, tortious interference

                                  1

1  with contract, and for violation of California Business and

2  Professions Code Sections 20020 and 20035.

3      Defendants removed the case to this court based on diversity

4  jurisdiction asserting that Dickman was fraudulently joined.

5  Plaintiff now moves to remand the case.

**I.**

**FACTS**[1]

8      Plaintiff Mammoth Hardware & Lumber, Inc. entered into a

9  written franchise agreement with Ace Hardware, whereby plaintiff

10 was granted the right to do business in Mammoth Lakes, California,

11 as an "Ace Hardware Store."  It sold hardware items, construction

12 materials, tools and related items in accordance with a marketing

13 plan prescribed in substantial part by Ace Hardware, hereafter,

14 "the contract".  Pl.'s Br. in Supp. of Mot. to Remand at 2.

15     Plaintiff claims that the contract required Mammoth Hardware

16 to share privileged information with Ace Hardware, including any

17 changes or modification in the ownership of the store, leases,

18 proposed leases, financial statements, etc. Id.  Plaintiff claims

19 that it complied with the disclosure terms of the contract by

20 releasing information to Ace Hardware as well as directly to

21 defendant Lee Dickman, an employee of Ace.  Id.  Because of this,

22 plaintiff asserts, the defendants were aware of plaintiff's efforts

23 to sell their store to James and Elaine Smith.  Id.  Plaintiff

24

25     [1]  The facts are taken from the parties' papers and the
   complaint, they are not to be treated as final for anything beyond
26 this motion.

2

1  alleges that these privileged communications were the sole basis
2  of defendants' knowledge.  <u>Id</u>.

3      Plaintiff alleges that, in insisting on attending a meeting
4  with the proposed buyers, Dickman represented to Mammoth that his
5  sole purpose in attending the meeting was to "evaluate" the
6  proposed buyers, under the terms of the contract. <u>Id</u>. at 3.  It
7  claims that this statement was false and that Dickman instead used
8  the meeting to interfere with the proposed sale of Mammoth Hardware
9  by falsely advising the Smiths that it would be less expensive for
10  them to start up a new franchise with Ace than to purchase Mammoth
11  Hardware. <u>Id</u>.  Plaintiff claims that it would have been more
12  expensive to start-up a new business than to purchase an
13  established local hardware store with substantial good will in the
14  community, and that the purpose of the statement was to prevent the
15  sale, and to steer the franchise toward High Country Lumber.  <u>Id</u>.
16      James and Elaine Smith did not purchase Mammoth Hardware, and
17  plaintiffs allege that the sale was thwarted by the
18  misrepresentation and action of defendants Ace and Dickman.
19  Eventually, a franchise was granted by Ace to High Country Lumber.
20  Nowling Dec. at 17, ¶ 6.

21      Defendants claim that Dickman had no access to privileged
22  information, and that he attended the meeting with the Smiths only
23  because it was arranged by Ms. Nowling so that Ace could perform
24  a due diligence check on the prospective commercial purchase.
25  Defs.' Opp'n at 3.  They claim that at the meeting Dickman actually
26  informed the Smiths that "an existing store does have an

3

1  established customer base and it is usually easier to obtain
2  financing, whereas opening a new store is generally riskier."
3  Dickman Dec. at ¶ 8.

**II.**

**STANDARDS**

**A.   FRAUDULENT JOINDER STANDARD**

Civil actions not involving a federal question are removable to a
federal district court only if there is diversity of citizenship
between the parties.  28 U.S.C. § 1332(a)(1).  Section 1332
requires that there be complete diversity; that is, each
plaintiff's citizenship must be diverse as to each defendant's
citizenship. Id.  Nonetheless, a defendant may remove a civil
action that alleges claims against a non-diverse defendant when the
plaintiff has no basis for suing that defendant, or in other words,
when that defendant has been fraudulently joined.  McCabe v.
General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

"[F]raudulent joinder is a term of art.  If the plaintiff
fails to state a cause of action against a resident defendant, and
the failure is obvious according to the settled rules of the state,
the joinder of the resident defendant is fraudulent." Ritchey v.
Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)(quoting
McCabe, 811 F.2d at 1339) (citations omitted).  Where a non-diverse
defendant has been "fraudulently joined" to an otherwise completely
diverse case, that defendant is disregarded for diversity
jurisdiction purposes. See, e.g., Calero v. Unisys Corp., 271
F.Supp.2d 1172, 1176 (N.D. Cal. 2003).

1    On a motion to remand, the removing defendant faces a strong

2  presumption against removal, and bears the burden of establishing

3  that removal was proper by a preponderance of evidence.   Sanchez

4  v. Monumental Life Ins. Co., 102 F.3d 398, 403-404 (9th Cir. 1996);

5  Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992).   Thus, the

6  defendant carries a high burden of establishing that the non-

7  diverse party was fraudulently joined.   See Gaus, 980 F.2d at 564.

8    28 U.S.C. § 1447(c) provides that a case removed from state

9  court should be remanded if it appears that the case was removed

10  improvidently or without jurisdiction.   Federal jurisdiction must

11  be rejected if there is any doubt as to the right of removal. Gaus,

12  980 F.2d at 566.

13    In determining whether a non-diverse defendant has been

14  improperly joined, courts may look beyond the pleadings and examine

15  the factual record. McCabe, 811 F.2d at 1339.

16                              **III.**

17                           **ANALYSIS**

18    As outlined above, defendants have a heavy burden to carry in

19  demonstrating that Dickman was fraudulently joined.   They attempt

20  to meet this burden through three different arguments. First, they

21  claim that plaintiff's complaint does not state a viable claim

22  against Dickman in his individual capacity.   Second, they claim

23  that the complaint does not allege facts that amount to wrongful

24  conduct.   Finally, they claim that even if the court reviews the

25  additional allegations made in plaintiffs brief that there is still

26  not sufficient evidence to support a claim.   These arguments will

1  be addressed in turn.

2      In support of the first argument defendants cite <u>McCabe v.</u>
3  <u>General Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987).  They
4  assert <u>McCabe</u> stands for the proposition that when an agent acts,
5  at least in part, to benefit his principal, that his conduct is
6  privileged.  The court in <u>McCabe</u> held that two individual
7  defendants could not be held liable if they were "motivated in
8  party by a desire to benefit [their] principal." <u>Id</u>. (quoting <u>Los</u>
9  <u>Angeles Airways, Inc. v. Davis</u>, 687 F.2d 321, 328 (9th Cir. 1982)).
10 It appears that the plaintiff's original complaint alleged wrongful
11 discharge against the individual defendants as well as the
12 company.[2]  The court found that their actions had been "in their
13 managerial capacity" and that the complaint had stated that the
14 actions were ratified by General Foods, but did not allege that
15 they acted in their own initiative.  <u>Id</u>.

16     Mammoth seeks to distinguish the case on the grounds that
17 there was contractual privity between the employer and the
18 plaintiff (but not plaintiff and co-workers) and that privity is
19 an essential element of a wrongful discharge claim.  They claim
20 that privity is not required for a tort of interference with
21 prospective economic advantage.  They further cite to California
22 Civil Code § 2343 as setting out when an agent, such as Dickman,
23 can be liable to third parties for their own wrongful conduct.  The

24

25     [2]  Plaintiff reads the case to say that there was a wrongful
   discharge claim in the complaint, but as stated in the case it is
   not entirely clear what the exact allegations were against the
26 individual defendants.

1  section, in its entirety, reads as follows:

2      AGENT'S RESPONSIBILITY TO THIRD PERSONS. One who assumes
       to act as an agent is responsible to third persons as a
3      principal for his acts in the course of his agency, in
       any of the following cases, and in no others:
4      1. When, with his consent, credit is given to him
       personally in a transaction;
5      2. When he enters into a written contract in the name of
       his principal, without believing, in good faith, that he
6      has authority to do so; or,
       3. When his acts are wrongful in their nature.
7

8  Cal. Civ. Code § 2343 (emphasis added).  The statute's plain words

9  provide that if Dickman's conduct was "wrongful", he may be

10 individually liable for his actions.

11     Defendants argue that "no law stands for the proposition that

12 an agent is liable for legal conduct occurring for the sole benefit

13 of the principal." Defs.' Br. in Opp'n to Mot. to Remand at 5.

14 Given the statute, the court assumes defendants mean no case.

15 While this may be true (although the fact that there is no law does

16 not make it the case one way or the other), plaintiff has alleged,

17 both in the complaint and in the additional information provided

18 with their motion to remand, that Dickman's behavior did not

19 constitute "legal conduct."  Defendants do not address the above

20 statutory section at all in their opposition brief.

21     The court has done a general review on the standard for agent

22 liability to third parties for torts committed while acting as an

23 agent to a principal.  While it appears that plaintiff probably

24 has a weak case against Dickman, the standard of review here

25 requires that it be "obvious" that there is no possibility of

26 liability.  A number of cases directly say that the rule is not

7

1   clear although most lean against imposing liability.  <u>See</u> <u>Aalgaard</u>
2   <u>v. Merchants Nat. Bank, Inc.</u>, 224 Cal.App.3d 674, 685 (3d Dist.
3   1990) (finding that there is a "knot of authority" on the issue of
4   whether the privilege is absolute, but ultimately holding that if
5   there is no evidence that the defendant acted in self interest that
6   the privilege is intact even if it may be qualified); <u>Graw v. Los</u>
7   <u>Angeles County Metropolitan Transp. Authority</u>, 52 F. Supp. 2d 1152,
8   1155 (C.D. Cal. 1999) (finding that "there is no consensus of
9   California decisions" on the question of privilege, but ultimately
10  finding that the "manager's privilege applies if the manager acted
11  at least in part to benefit the company.").

12      It may be that the question of agent liability depends upon
13  the type of action being pursued.  If the allegation is that the
14  agent committed a tort then under Civil Code § 2343, liability may
15  exist.  <u>See</u>, <u>e.g.</u>, <u>California Jurisprudence 3d</u> § 122 ("If a
16  tortious act has been committed by an agent acting under authority
17  of the principal, the fact that the principal is liable, including
18  liability arising from the principal's ratification, does not
19  exonerate the agent from liability.  An agent's duty to the
20  principal does not preclude the agent's liability to third parties
21  foreseeably injured by his or her conduct.  The agent becomes
22  personally liable for his or her own tortious acts even when
23  committed at the direction of the principal.").

24      In sum, defendants have not met their burden of showing that
25  Dickman is "obviously" not liable.  Without a clear statement of
26  the law prohibiting application of liability to Dickman, this court

1  cannot find that he was fraudulently joined.

2      The second argument presented by defendants is that the
3  complaint does not allege facts amounting to "wrongful" conduct.
4  To establish a claim for interference with prospective economic
5  advantage, Mammoth must prove that Ace and/or Dickman engaged in
6  an independently wrongful act (outside of interference).  As Korea
7  Supply Co. v. Lockheed Martin Corp. states, to satisfy the
8  independently wrongful prong plaintiff "must plead and prove as
9  part of its case-in-chief that the defendant not only knowingly
10 interfered with the Plaintiff's expectancy, but engaged in conduct
11 that was wrongful by some legal measure other than the fact of
12 interference itself."  29 Cal.4th 1134, 1158-59 (2003).  The
13 complaint states that the conduct of Ace and Dickman was
14 "intentional, wrongful, and in violation of the implied covenants
15 of good faith and fair dealing in the Agreement. . ."  Compl. at
16 ¶ 11.  It further states that the wrongful act by Dickman included
17 "discourag[ing] potential buyers of the BUSINESS from dealing with
18 MAMMOTH by advising such buyers that it would be cheaper and to
19 their economic advantage to start up a new operation with a new
20 franchise issued by ACE, than to purchase the existing BUSINESS."
21 Compl. at ¶ 10.  It thus appears from the face of the complaint
22 alone that plaintiff has alleged at least one act which it believes
23 to be wrongful.

24     Plaintiff's motion to remand further clarifies and sets out
25 three specific acts which are allegedly wrongful.  First, it claims
26 that Dickman represented to plaintiff that he only wanted to meet

9

with the Smiths in order to "evaluate" the proposed buyers. Plaintiff claims that this representation was false and that Dickman instead used the meeting and the privileged information he had to "interfere with the proposed sale" by advising the Smiths that it would be cheaper to start up a new franchise. Plaintiff alleges that this statement was also false and that is purpose was to thwart the sale and instead steer the Smiths towards the franchise for High Country Lumber.

Defendants claim that the above statements were not wrongful, and rather were only a matter of opinion for which a person cannot incur liability, citing <u>Morningstart Inc. v. Superior Court</u>, 23 Cal.App.4th 676, 696 (1994). Defendants characterization of that case, however, states that "expressions of opinion or advice cannot form the basis of an interference . . . unless those expressions contain false or defamatory statements of fact." <u>Id</u>. It appears that this is exactly what plaintiff alleges. The same goes for their citation of <u>Savage v. Pacific Gas & Electric Co.</u> which held that a defendant cannot incur liability for truthful information given. 21 Cal.App.4th 434, 449-50 (1993). Plaintiff alleges that Dickman gave false statements of fact to the Smiths.

Finally, defendants claim that even if the court looks beyond the pleadings that plaintiff's evidence does not support a viable claim. They ask the court to review the credibility of various sets of conflicting declarations. Plaintiff believes that Dickman intentionally misrepresented facts to the Smiths in order to derail their plan of purchasing Mammoth Hardware by disclosing privileged

1   information and by alleging false information about the costs.

2   Dickman's testimony states that he did not have any access to

3   privileged information, that the meeting he attended with the

4   Smiths was arranged by Ms. Nowling, and that he did not know the

5   asking price of Mammoth and therefore could not represent that the

6   purchase of a new franchise would be less expensive.

7       Defendants also note that plaintiff fails to present any

8   competent evidence that Dickman's statement was false by some

9   objective measure. The burden is on defendants, however, and

10  plaintiff has provided general statements about why they think

11  buying a store with "considerable goodwill" in the community would

12  be a wiser choice.  In construing this evidence against removal,

13  it appears to be appropriate to allow the state court to determine

14  this issue on a motion to dismiss in that court.

15      Accordingly, the motion to remand is GRANTED and the above-

16  captioned case is hereby REMANDED to the Superior Court of the

17  State of California in and for the County of Mono.[3]

18      IT IS SO ORDERED.

19      DATED:  February 3, 2006

20                                  /s/Lawrence K. Karlton
                                    LAWRENCE K. KARLTON
21                                  SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT
22

23

24

25  _____

26      [3]  Based on the court's disposition above, the court need not
    reach the motion to dismiss now pending before the court.

                                   11